Hugunin v. Land O'Lakes, Mr. Partridge. Morning. May it please the Court. My name is Mark Partridge and I represent Jim Hugunin and his related companies involved in the fishing tackle industry. He is the prior user alleged in the complaint of the Land O'Lakes mark for fishing tackle. Mr. Hugunin appeals from a summary judgment decision granted against his claim for trademark infringement under the Lanham Act. The case went to trial in 2015 on defendants counterclaim for dilution. Mr. Hugunin prevailed and no appeal was taken from the trial decision. The only claim on The issue is Mr. Hugunin's contention that the district court applied an incorrect legal standard. What I don't understand, how is Hugunin hurt by people associating him erroneously with this huge company, Land O'Lakes? I would think it would increase his sales. Yes. People would think, well it's not just dealing with some little fellow in upstate Wisconsin who sells a few fishing tackle every year. I'm dealing with this established company and it's in the fishing industry now. It's not just butter anymore. So why is he complaining? Yes, Your Honor. His deposition explains it. In the deposition, the entire but he explains that the situation is what he alleged in the complaint was one of reverse confusion where he was being confused as whether he was. So what? He's being confused with a much larger enterprise. And if they think he's part of the Land O'Lakes Corporation, they'll think yeah, this is reputable. Yeah, it's a big company I'm The confusion arose with people asking about him being involved with Land O'Lakes, whether they would complain. He had actual confusion that's in the record. He alleges from customers. Could you please answer my question? Yes, Your Honor. How does it hurt his business? His business was hurt by investors who were also confused and would not invest he was on. I don't understand you. What does it mean? Investor is confused. If the investor thinks he's investing in Land O'Lakes, Inc., he'd feel more comfortable. This is a big company. You'd rather invest in a big company than some little fishing place in northern Wisconsin. As Mr. Hugan explains in his deposition, he found that investors where he needed money to build his business with Walmart would not provide the funds because they were uncertain about his relationship with Land O'Lakes. They were uncertain about whether Land O'Lakes might sue him so that confusion damaged him. They ask him and he says he has nothing to do with Land O'Lakes. So where's the confusion? The confusion is part of that relationship. Look, I don't get it. Yes, Your Honor. I don't understand you. Someone asks Hugan, are you connected with the Land O'Lakes company? And he says no. Land O'Lakes is a name for this northern part of Wisconsin. That's where I got my name from. Absolutely nothing to do with this other company. Now why doesn't that dispel the investors' doubts? In fact, the record showed that it didn't. Well, why not? Because the investors weren't satisfied with the answer. They believed that there was a confusion about affiliation, whether Land O'Lakes would bring action. I don't understand you. They ask him whether he's connected to Land O'Lakes. He says no. Now it's very easy for these potential investors to find out whether it's true or not. Just call up Land O'Lakes. Do you make this fish tackle that's sold in northern Wisconsin? They say no. I don't know if any investors did that. The record shows that the investors he dealt with did not. I don't understand you because it doesn't make any sense, your position. Well, his position was that he experienced... It sounds totally phony. I don't see how he can be hurt by being confused with a much larger company, which investors and customers and everyone would rather do business with. He explains that in his testimony. It was in the record. It really is a dispute of fact, but it's a question on whether those investors were indeed confused. Why? What's the investors' worry? They're worried that he's not affiliated with them, but people will believe he is and that Land O'Lakes will accuse him of infringement. This is the problem that comes about with reverse confusion where a larger entity moves in to a smaller entity's industry. Of course, Land O'Lakes did sue, but it lost the suit. That's ancient history now, isn't it? They can't be hurt now. Land O'Lakes can't sue them. In fact, if anyone says that there's a connection with Land O'Lakes, he'll show them. Land O'Lakes sued me and lost. So forget about Land O'Lakes, Inc. That is certainly the position now, the position at the time the case was brought, the position when the harm was done. Did he lose sales or something? Yes, he lost investment and therefore he lost the ability to reach his business plan. No one would invest in his company? His testimony was that he had over a million dollars in investors from friends and family. He was looking for more because he had the opportunity to expand his sales dramatically at Walmart if he could get the funding to do it. The conflict arose when Land O'Lakes is promoting the Land O'Lakes Angler of the Year Award, and that is creating confusion amongst customers, confusion with his investors, and he's not able to reap the investment money he needed to make that next step. That's the harm alleged, and he testified about that. His testimony in the case I think is very important. The testimony that he provided explained the nature of the confusion under the standard of the statute. Of course, the standard of the statute that was alleged in the complaint is 1125, 1125A, which deals with a likelihood of confusion as to sponsorship, affiliation, approval, or also source. But his focus in the complaint and through his claim is that there's confusion as to sponsorship or affiliation. That's what he experienced. His testimony as a small businessman is the heart of the case. He's lived this since the problem arose. At trial on dilution, the judge found him to specifically be a credible witness. So those facts are disputed by Land O'Lakes, but they're important evidence. They are evidence directly on issue with the statutory claim that was made in the complaint. The next point is what was argued on summary judgment. Land O'Lakes argued on summary judgment that they acknowledged that this kind of conduct, a larger company moving in to a new industry occupied by a junior user, that that could be an infringement. And then Land O'Lakes is not making fishing tackle? No, they're not making fishing tackle, but the statute, of course, is not limited to making, selling the identical problem. Well, it seems ridiculous to say that they can't award an angler, give an angler of the year award because they don't make fishing tackle. There's a point in the brief where, in the arguments, where they're saying, does this center on them sponsoring a fishing tournament? It doesn't center on them merely sponsoring a fishing tournament, nor does it center on them selling fishing tackle or using the Land O'Lakes mark to sell fishing tackle. The problem is in between where there is a likelihood of confusion as to sponsorship or affiliation. Of what? I don't understand. I'm lost. I thought your argument was precisely that they were sponsoring a fishing contest and awarding a Land O'Lakes prize. That they are doing more than merely sponsoring a fishing contest is our position, and if you go to our response. What's the more? The more is laid out in the declaration. What is the more? Yes, they did the Land O'Lakes Angler of the Year Award, not just sponsoring the fishing tournament. They ran fishing clinics at Walmart, which Mr. Hugenin also did. They advertised in fishing publications where tackle was sold, which Mr. Hugenin also did. What did they advertise? They advertised butter, but they featured a Land O'Lakes. How could they advertise butter in a fishing magazine? If you look at the advertisement, they advertised. I can't imagine that the Lanham Act prevents Land O'Lakes from advertising the product on which their trademark is secure, just because of the nature of the publication. What is it that you think is the real trademark problem? The very fact that you're saying we're entitled to recover because they advertise in a fishing magazine holds your possession up to ridicule. So you need to be very precise about what it is you think is the serious trademark problem. So what is it, please? Thank you, Your Honor. It's not merely that. It is the combination of circumstances. Trademark infringement is built on the combination of circumstances. This Court has made it clear that you consider a variety of factors. One of those factors is that they were publishing in similar channels of trade. But they're advertising butter. But the advertisement features the angler of the year. I just told you that you're making a ridiculous argument. You've heard that now from two members of the bench. Really, if you've got a serious argument, you've got a serious infringement problem, this is the time to tell us. And telling us that they advertise butter in fishing magazines is not going to get you anywhere.  Yes, I understand. Thank you, Your Honor. It is the combination of circumstances where they enter the fishing industry. They've alleged repeated times that their entry... How on earth could you keep any company from entering the fishing industry? They entered the fishing industry with the Land O'Lakes trademark, where Mr. Hugenin had... Well, that is their legitimate name, Land O'Lakes. That's their legitimate name in the butter industry. And they're not allowed to go into any business in which there's a company that has the name Land O'Lakes? They're not allowed to go into, for example, the fishing tackle industry, where somebody... They're not in the fishing industry. ...already has. They haven't gone into the fishing tackle industry. They've gone into the fishing industry. Mr. Janssen's declaration talks about how... I know. ...that no one named Land O'Lakes or no one named the name of any other fishing tackle company can go into any aspect of the fishing industry. That seems quite preposterous. There's a qualification to that, Your Honor. It's if it creates a likelihood of confusion, mistake, or deception as to sponsorship. Anything in a fishing magazine creates confusion with Hugenin's fishing tackle company. That's not what I meant to argue. All right. Give me an example of an ad in a fishing magazine by a non-fishing company that would not violate Hugenin's trademark rights. If it was simply an automobile ad and they were not... An automobile ad in a fishing magazine? Yes. We wouldn't contend that that was an infringement of his rights. It's a combination of activities that included, and Mr. Janssen explains in his declaration how their activities were related to fishing tackle, and that's the factual issue here. There's evidence in the record that their activities were related to fishing tackle, not that they sold fishing tackle, that they engaged in activities in the fishing industry, that those activities caused a likelihood of confusion. What if Land O'Lakes said in their fishing ad, to increase your catch, put Land O'Lakes butter on the fishing lure? Your Honor, I think that could be a problem. It would have to be examined on a factual basis. There might need to be more evidence than that. Mr. Hugenin controlling the entirety of American capitalism because no other company can say anything about fishing. We don't go that far, Your Honor, and that's not what the circumstances are here. There's much more in the way of activities. Ten years of use... What if they had just had the Angler of the Year Award? Would that be an infringement of Hugenin's... Land O'Lakes Angler of the Year Award could be a problem, and we think it would. Well, imagine Ritz Hotel, a longstanding use of Ritz. There's Ritz Camera more recent. If Ritz Hotels moves into and has a Ritz Photographer of the Year Award, it could reasonably conclude that there was... You couldn't tell whether it was Ritz Camera's award or the hotel's award. There could reasonably be confusion. No, they couldn't. Because, look, words like Ritz and so on, they're used everywhere by all sorts of different companies. No one brings... They coexist in different fields, Your Honor, but when they move into the same field, there can be a likelihood of confusion, mistake, or deception, and that's what's claimed here. On the correct standard with the evidence presented, there's a triable issue of fact that should go to a jury. Okay. Well, thank you, Mr. Partridge. Mr. Van Oort. May it please the Court, to avoid the problems Your Honors have expressed as well as problems on laches and priority. In the district court, Mr. Hugen had made a very conscious shift away from premising his claim on what Land O'Lakes did and toward premising it on what others did directly to self-phishing tackle. He did that purposefully to avoid problems with his claim. He did it unmistakably 10 times in his brief. The district court recognized what he did, and when he tried to switch back after losing summary judgment in a motion to reconsider, the district court denied the motion to reconsider, saying it was too late. The correctness of that waiver ruling is sufficient to dispose of this entire appeal, but the fact that Mr. Hugen neither listed the order on the motion to reconsider in his notice of appeal or put it in an appendix or even addressed it in his opening brief is another reason to do it. So let me just... I must say that I'm perplexed by that argument. There's only one appealable decision in this case, and that decision was appeal. It's black-letter law if you appeal the only final decision. You bring up all earlier and ancillary orders that go into the final decision. You don't appeal separately from them. You don't identify them separately. You just appeal from the final order. What's missing here? Your Honor, it's true that there is an appeal only after a final judgment. The order that he's appealing from came far earlier. It was on summary judgment and partially disposed. Yes, but you don't have to identify it. All you have to do is identify the final decision. That's black-letter law. Your Honor, our argument on that basis is based on the fact that in his notice of appeal he specifically identified the summary judgment order but not the motion to reconsider. But, Your Honor, put that aside because the bulk of our position is that the district court was entirely correct in finding that he shifted away from this theory on purpose. Let me tell you why. Land O'Lakes had moved for summary judgment against all of Mr. Huganin's claims on both priority and latches. In addition, Land O'Lakes had moved for summary judgment in its favor on dilution because it has a famous market, had it since the 1920s, and he had come into that. In order to mitigate his risk on those, he moved to secondary liability. He said, put aside, I'm not going to argue that Land O'Lakes can be liable for sponsoring tournaments to promote butter. What I'm going to argue is that this person, this angler of the year in this man's bait company specifically sold fishing tackle. That helped him in two ways. Number one, it shifted the time because that, he said, didn't happen until 2004. And so instead of latches starting in 2000 and priority starting in 2000, which is when it would have because he became earlier, he got himself four years on the period. The other thing he did is to avoid the dilution claim coming back at him. If he could step away from this broad argument and step away from arguing that fishing tackle is blurring with butter, that walks him right into a dilution claim. And by focusing specifically on tackle, he could make it narrower. So this is entirely conscious, and it was unmistakable. He did it 10 times in his brief to the district court. His introduction said, here's what his introduction said. It was defendants expanded use by allowing others to use the mark to sell fishing tackle. That was the basis of his claim. His conclusion repeated exactly the same thing. Now is that an argument about secondary liability? He hasn't sued the other people who used the mark on Land O'Lakes permission. He sued Land O'Lakes for authorizing. That looks like primary liability all the way. Well, Your Honor, maybe I'm just confusing the terminology. It could either be an inducement claim that Land O'Lakes induced these people, or it could be a vicarious claim that they authorized it. No, there's nothing vicarious. The claim is, as I understand it, Land O'Lakes turned to these other people and said, you are free to use this mark. Right? It's a license to use the mark. And so you sue the licensor who gave the license if it's impermissible to do that. Your perfectly normal theory of primary liability. Okay, Your Honor. I agree that that was the theory. The district court's holding on that theory was that there was no evidence either that Land O'Lakes had granted the authorization. None whatsoever. And of course it's true, because the claim user was Man's Bait Company, and the only evidence of it was actually a press release that said that Man's Bait was rolling out this new lure that had been designed by some of the world's best fishermen, and it listed five of them. And the fourth of the five was a guy... Now I'm getting even farther perplexed. You represent Land O'Lakes. Is Land O'Lakes denying that it authorized this use of its mark? What Land O'Lakes did is it sponsored... The question can be answered in only two ways, yes or no, and then you can explain. Yes, Land O'Lakes certainly denies that it allowed Man's Bait to use its mark in any way. So that's the answer directly to your question, Your Honor. And the context of it is that the only use that Mr. Hugen identified is a press article saying that Man's Bait was rolling out a new line of lures designed by some of the world's best fishermen, and it listed five of them, and the fourth of the five was Dan Morehouse, who had said had won the Land O'Lakes Angler of the Year Award in 2003. That is the entirety of the evidence on that claim. The district court found that that was insufficient. It's absolutely right on that claim, and that's an entirely sufficient basis to affirm. The other basis that we raise, those alternative bases, that this court can address if it wants to, but it doesn't need to, is Laches. Because Mr. Hugenen found out, of course, that Land O'Lakes was sponsoring fishing tournaments in 2000. He didn't say anything to Land O'Lakes until he filed this suit in 2011. That's an 11-year period. The underlying comparable statute of limitations period in Illinois law, which applies here because that's where Mr. Hugenen lives, is three years. Because he was three times that, it created a presumption of unreasonable delay under this court's hot wax decision. Well, what do you think is the consequence for that line of, that stripe of argument of Petrella against MGM? I think that, Your Honor, that that doesn't apply in the Lanham Act because the Lanham Act expressly makes equitable defenses apply here. And I believe, if I remember correctly. Which section should I look at? This is in, well, let's see. I believe it's in Section 1125. Your Honor, I didn't reread the MGM case. I know. It's puzzling to me that nobody talked about Petrella. Well, Your Honor, I think it's because there's a footnote in Petrella that distinguishes the Lanham Act on this. I didn't reread it before this argument, but I believe that's why it didn't come up here. There's express statutory authority in the Lanham Act as opposed to copyright for equitable defenses applying. And applying not just to equitable relief like injunctions, but damages as well. So that's the basis for that argument. As to the element, assuming that I'm right on that, assuming that Latches applies the elements are met here, it's unreasonable to belay plus prejudice. And under the hot wax case and others, when you're this far beyond the period, that's all it takes. Now, as I said, Mr. Hoogan and Below switched to this other theory so he could shorten the period. He also argued that he was relying on settlement negotiations, but because he had never ever accused Land O'Lakes of infringement, never asked Land O'Lakes to stop, there were no settlement negotiations. So that's Latches. Let me move finally to priority here. And this is an odd flavor of priority because this is reverse confusion here where there's a dominant senior user in the claimants that it comes in. The priority here that's relevant is when Land O'Lakes rolled out its nationwide sponsorship, which was January 1st, 1998. Under this court's precedent, a nationwide sponsorship like that is sufficient to gain priority. Now, Land O'Lakes never used its mark to sell fishing tackles, so it's not the ordinary priority. But the idea that he has is that he can box Land O'Lakes from advertising butter and fishing. The relevant date to consider is, did Land O'Lakes come in and do that before he was ever involved? And the answer to that is yes, because before January 1st, 1998, the only use that Mr. Hugenin had made of this mark is a single sale of $140 in the local bait shop called The Minnow Bucket. And a single sale on a handwritten receipt there is not enough to get priority in any way. And so even if we were in this strange world where you can cross over categories like this, Mr. Hugenin would lose as a matter of law and priority. Could you go back to, you'd mentioned five people, one of whom was Angler of the Year. What was that about? That's correct. It's in the district court. It's docket 43-18, Your Honor. This is the single piece of evidence that Mr. Hugenin relied on for this theory that Land O'Lakes was liable because it authorized others to use the mark to sell fishing tackle. He had one piece of evidence. It was this news article. And so that's the sole evidence. And what he said is the infringing use is man's bait rolling out a new line of fishing lures that it said had been helped design by the world's best fishermen, and it listed five of them. The fourth on that list was the guy who won the Land O'Lakes. That is the sole evidence he has for this theory of infringement. The other four had no connection to? No, the other four had won other fishing awards. But not Land O'Lakes. Not the Land O'Lakes award. So the idea that listing that in there as proof of infringement by Land O'Lakes of his mark is insufficient as a matter of law. And what ties the five together? They all sell tackle? They're really good fishermen. That man's bait hired to help them design its lures. Excuse me? That man's bait hired them to help design its lures so it could advertise its lures as being really good. There's no connection. Who hired them? What's that? What was the firm that hired them? Man's Bait Company. Oh, I see. Completely different. Completely third party. This is the argument. I see. So you're saying that the award of one of the five is what Houganin ties to Land O'Lakes. Yes. That's the connection. That's the only connection. That was the extent of the evidence. That's why the district court granted summary judgment for Land O'Lakes, which was entirely correct. If your honors have other questions, I'm happy to answer them. Okay. Thank you very much, Mr. Van Ooy. Mr. Partridge, anything further? Your honors, first of all, the issue of priority, that's an intensely factual question. It was argued on summary judgment before the trademark trial and appeal board where Land O'Lakes brought a claim for likelihood of confusion. The trademark trial and appeal board denied their motion for summary judgment on that issue. It's an intensely factual issue that should go to trial. The Latches issue is also an intensely factual issue that should go to trial. The judge in this case dealt with the Latches claim against Land O'Lakes and found extensive factual issues on Latches, and so we went to trial on that affirmative defense. The same issues apply here, that there are factual disputes that would need to be settled at trial. As far as taking the decision and narrowing it down to simply was the issue whether Land O'Lakes allowed persons to use the Land O'Lakes mark on tackle, that was not Huganin's claim. His claim was broader than that. He explained it in his testimony, and the response to, which was in both cases very short. Land O'Lakes argued for two pages about this issue, and Huganin's response was similarly short. The parties were focused on another thing, but there were four areas of key facts that were in dispute. The question of whether or not defendant was in the fishing industry in a way that would cause a likelihood of confusion as to sponsorship. Whether they allowed the mark to be used in connection with fishing tackle. There's testimony from Huganin that supports that, and there's the situation with man's bait. So does Huganin argue that he's lost sales of his tackle? Yes, he argues that he's lost business opportunities in the ability to expand with Walmart and have greater sales, but that was not the dispute here. How does Walmart figure in this? Walmart fits in. It's a customer of both parties, but Mr. Huganin was selling his products. But Walmart isn't buying fishing tackle from Land O'Lakes. No, it's buying fishing tackle from Mr. Huganin, and he had an opportunity to expand that he could not take advantage of because of the experience he was experiencing. Wait, I don't understand. He wanted to sell more through Walmart, and Walmart said what? Walmart offered greater expansion opportunities, but he needed resources to have the inventory to meet those demands, which he was unable to get because investors backed out. Why would his ability to attract resources be affected by Land O'Lakes? It was affected by Land O'Lakes activities in the fishing industry, which created confusion and a concern about whether he would be sued. Oh, this is back to your point about investors being frightened. It is, Your Honor. Okay, well, thank you very much, Mr. Partridge and Mr. Van Orn.